## PINKETT et al. v. UNITED STATES.

Civ. No. 5736.

United States District Court,
D. Maryland.

Heard May 14, 1952.

Decided June 3, 1952.

Marvin H. Smith, Denton, Md., and David G. MacDonald, Washington, D. C., for plaintiff.

H. G. Morison, Asst. Atty. Gen., James E. Kilday and E. Riggs McConnell, Sp. Assts. to Atty. Gen., Bernard J. Flynn, U. S. Atty., and C. Ross McKenrick, Asst. U. S. Atty., Baltimore Md., for the United States.

Daniel W. Knowlton, Chief Counsel and H. L. Underwood, Asst. Chief Counsel, Washington, D. C., for Interstate Commerce Commission.

Before SOPER, Circuit Judge, and COLEMAN and CHESNUT, District Judges.

SOPER, Circuit Judge.

This is an action by W. Howard Pinkett, of Denton, Maryland, John Black of Worton, Maryland, and Alexander Ayers of Centreville, Maryland, common carriers severally engaged in the motor transportation of passengers and their baggage in charter service within the territories hereinafter described, to enjoin, vacate, and set aside an order of the Interstate Commerce Commission dated March 6, 1951, and to restrain the Commission from granting a certificate of public convenience and necessity to partners Estelle W. Cochran and Malcolm Cochran of Middletown, Delaware, to operate similar service between designated points in the same territory. Jurisdiction is invoked under § 17(9) of the Interstate Commerce Act, 49 U.S.C.A. § 17(9), and under the Judicial Code of the United States, 28 U.S.C.A. § 1336; and the case was heard by a court composed of three judges pursuant to 28 U.S.C.A. §§ 2284 and 2325.

The Cochrans do not presently hold interstate or intrastate rights as a motor carrier. They hold no certificate or other authority from the Commission, while each of the plaintiffs does operate pursuant to a certificate of public convenience and necessity issued to him by the Commission. Pinkett's certificate authorizes operations from a specified area of Caroline County, Maryland and from Cordova, Matthews, Queen Anne's, Willoughby, and Starr, Maryland, to Chester, West Chester and Philadelphia, Pennsylvania, Salem and Atlantic City, New Jersey, and points in Delaware and the District of Columbia; and also round trip charter operations beginning and ending at Denton, Maryland, and points within 35 miles thereof, except points in Dorchester, Maryland, extending to points in Pennsylvania, New Jersey, New York, Delaware, Virginia, Maryland and the District of Columbia. Black's certificate authorizes operations from points and places in Kent County, Maryland, to Philadelphia and Chester, Pennsylvania, Camden, New Jersey, and points in Delaware, and return, and Ayer's certificate authorizes operations from points and places in Queen Anne's County, Maryland, to Philadelphia and Chester, Pennsylvania, the District of Columbia, and points and places in Delaware, and return.

On February 24, 1950, the Cochrans filed an application under the provisions of Section 207(a) of the Interstate Commerce Act, 49 U.S.C.A. § 307(a), seeking a certificate of public convenience and necessity authorizing operation in interstate and foreign commerce as a common carrier by motor vehicle of passengers and their baggage in charter service between points within 20 miles of Middletown, New Castle County, Delaware, including Middletown, on the one hand, and, on the other, points and places in Maryland, Virginia, Pennsylvania, New Jersey, and the District of Columbia, over irregular routes. The application did not include a request for authority from points in Maryland within 20 miles of Middletown to any points in Delaware, and return.

The application was filed on form BMC-74 prescribed by the Commission effective May 1, 1941, pursuant to §§ 205(e) and 206 (b) of the Interstate Commerce Act, 49 U.S.C.A. §§ 305(e) and 306(b), which provide in substance that reasonable notice shall be afforded to interested parties in accordance with rules prescribed by the Commission. Printed on the form is the requirement that each applicant shall serve notice of the filing of the application, giv-

ing a brief description of its content, upon each carrier "known to the applicant, with whose service the operations described in such application are or will be directly competitive."

None of the plaintiffs were served with notice by the Cochrans or the Commission, although Pinkett learned of the application prior to the hearing and attended it. Neither Black nor Ayers had knowledge or notice of the application or the hearing until after the Commission had issued its report on March 6, 1951. This is not denied, but the Commission contends that since the applicant did not know that Black and Ayers were operators with whose service the applicant's proposed service would be directly competitive, they were not entitled to notice of the proceedings.

The application was referred to Examiner William N. Culbertson who conducted a hearing at Wilmington, Delaware, on July 18, 1950. He issued his report and a proposed order August 15, 1950, recommending that the certificate be issued subject to restrictions not here relevant.

On September 5, 1950, the opposing carriers, including Pinkett, filed exceptions to the recommended report and order of the examiner, requesting that the application be denied insofar as it sought authority to operate from points in Maryland within 20 miles of Middletown, Delaware.

The Commission, by Division 5, on March 6, 1951, filed its report which found that the applicants were entitled to a certificate of convenience and necessity as prayed in the amended application, and directed that the certificate be issued upon compliance by the applicant with the requirements of the statute and the regulations. The report included this statement: "Although applicant did not include Delaware as a State to be served (from Maryland) in the radial area, it is clear that such service is intended and therefore, the application will be considered as amended to conform to the evidence in this report."

On July 3, 1951, plaintiff, John Black, filed his petition for leave to intervene and for reopening and a rehearing, alleging that he held a certificate authorizing operations competitive with those proposed by the applicant; that he was ready, willing and able to provide the needed service; that he had no knowledge of the filing of the application or of the hearing, and was not served with notice of the pendency of the matter; and that he desired to be heard. By order dated October 12, 1951, the Commission granted Black's petition to intervene to "participate in all further proceedings therein," but by order of November 5, 1951, denied his petition for reopening and rehearing. On the same date the Commission also denied a petition filed by Pinkett on or about July 6, 1951, requesting reopening and a hearing de novo on the ground that the Commission had enlarged the scope of authority granted beyond the scope of that sought in the application by adding Delaware as a state to be served, and, in addition, on the ground that examiner Culbertson was not a qualified examiner pursuant to the requirements of the Administrative Procedure Act, § 11, 5 U.S.C.A. § 1010. On this point Pinkett alleged that it was not until some time after the hearing that he discovered that the examiner was not properly qualified. In denying the petition the Commission said "that even though the examiner who presided at the hearing was not appointed under the Administrative Procedure Act, the hearing was valid, because this issue was not raised prior to the close of such hearing; and it does not appear that the evidence that would be adduced at another hearing would require denial or modification of the authority granted by Division 5."

On or about November 29, 1951, plaintiff Ayers filed a petition similar insofar as lack of notice was concerned to that filed by plaintiff Black, stating further that a principal part of his operation was from points in Queen Anne's County, Maryland, to points in Delaware, operations not requested by the Cochrans in their application, but operations which the Commission, nevertheless, proposed to grant them by its order. Ayers' petition was also denied by the Commission.

■ We shall confine ourselves to the contentions of the plaintiffs that the Com-

mission's actions in approving the examiner's report and in refusing to reopen the case should be set aside because the Commission failed to follow the procedure prescribed by §§ 205(e) and 206(b) of the Interstate Commerce Act, 49 U.S.C.A. § 305 (e) and 306(b), with respect to giving notice of the Cochran application to interested parties, or to follow the procedure prescribed by §§ 7 and 11 of the Administrative Procedure Act, 5 U.S.C.A. §§ 1006 and 1010 with respect to a hearing and report upon the application by an examiner appointed and assigned, as required by the statute. As the reviewing court we are required by § 10(e) of the Administrative Procedure Act, 5 U.S.C.A. § 1009(e) to decide relevant questions of law and to interpret statutory provisions and to set aside agency action found to be not in accordance with the statute.

It is admitted that Black and Ayers, who were clearly interested parties, did not receive notice of the Cochran application and of the hearing before the examiner. Section 205(e) of the Interstate Commerce Act makes the following provision as to notice to interested parties:

"(e) In accordance with rules prescribed by the Commission, reasonable notice shall be afforded, in connection with any proceeding under this chapter, to interested parties and to the board of any State, or to the governor if there be no board, in which the motor carrier operations involved in the proceeding are or are proposed to be conducted, and opportunity for intervention in any such proceeding for the purpose of making representations to the Commission or for participating in a hearing, if a hearing is held, shall be afforded to all interested parties."

Section 206(b) provides in part that an application to the Commission for a certificate shall be accompanied by proof of service upon such interested parties as the Commission shall by regulation require.

Section 5(a) of the Administrative Procedure Act provides in part that in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing, with certain exceptions not here relevant, persons entitled to notice of the hearing shall be timely informed of the time, place and nature thereof.

The Commission's rule as to notice to interested parties which was in force at the time of the Cochran application did not comply with the notice provisions of either of these statutes. It merely required the applicant to deliver notice of the application in person or by registered or receipted mail to each carrier known to the applicant with whose service of operation described in the application would be directly competitive.[1] In effect this action merely delegated the duty of notice to the applicant but restricted the notice to those potential competitors whom the applicant happened to know. The inadequacy of this provision was recognized by the Commission itself by an order of January 15, 1951, effective March 15, 1951, subsequent to the application and report in this cause. By this order the Commission modified the rule as to notice by requiring the applicant to make a diligent inquiry in respect to the notice to be given at the appropriate field offices of the Commission's bureau of motor carriers to determine the name of every motor carrier, railroad or water carrier, with whose service the operation described in the application would be competitive.

We are not prepared to say that even this modified rule is a sufficient performance of the duty to give notice imposed upon the Commission by the statutes which contemplate that the Commission shall not consider or take action upon the petition of any applicant which may affect the rights of

1. The application was made on a form BMC.-74 which contained the following direction: "A notice of the filing of this application, Form BMC 15 (Revised), was delivered in person or by registered or receipted mail, to the following competitors by motor vehicle, rail or water (applicants should carefully follow the Commission's order requiring that the applicant notify each motor carrier, railroad, or water carrier, known to the applicant, with whose service the operations described in this application are or will be directly competitive.)

other parties without notice and an opportunity to be heard. It is, however, not our function to prescribe the rule which the Commission should pass and we confine ourselves to the holding that the duty to see that proper service is made was not adequately performed in the instant case with the result that parties that might be affected by the issuance of the proposed certificate had no notice of the application and that therefore the issuance of the certificate must be restrained.

On this point the situation is quite different from that in W. J. Dillner Transfer Co. v. U. S., D.C.Pa., 101 F.Supp. 506, where the plaintiffs had actual knowledge of the proceedings, but contended that they were entitled to more, namely, "formal notice."

The Commission itself has reopened a number of proceedings on petitions of competitive carriers not notified of the pending applications. In The Greyhound Corporation Extension of Operations—Slidell, La., 47 M.C.C. 103, 104, (1947), a petitioner sought a further hearing and leave to intervene, after the recommended report of the examiner had been served. While the petition for further hearing was pending and after issuance of an order allowing the intervention, an order was released making the examiner's recommended report final, following which a certificate was issued. The Commission held that the certificate should be revoked, stating:

"In his petition, the intervener alleges that the authority here sought involves a route identical to that over which he holds authority to operate; that operation thereover by the applicant will cause him irreparable damage; and that he had no notice of the hearing in this proceeding. A review of the record herein shows that applicant did not notify 'a local carrier operating over the alternate route here involved' of the filing of its application, because it did not have knowledge of the service or of the carrier performing it. Presumably, intervener is that local carrier.

"In considering an application for a public convenience and necessity we are entitled to have before us all materi-

al facts relating to the issues involved. Intervener is a proper party in interest. Applicant has no right to a certificate inadvertently issued, or to a determination of its application during the pendency of intervener's petition for further hearing. From our consideration thereof, we think that the intervener is entitled to be heard, and that he should not be denied the right because of our inadvertent release of the notice * * * and issuance of the certificate."

The Commission reopened the proceedings for further hearing.

In Leonard Bros. Transfer & Storage Co., Inc., Extension, 48 M.C.C. 773, the petitioners, as Black and Ayers in the present case, alleged that they were competitors of the proposed operation and that they had not been provided with notice of the hearing. The Commission granted the petition and assigned a further hearing at which time the applicant, relying on an opinion of the Director of the Bureau of Motor Carriers that a hearing de novo was unnecessary, offered no witnesses but rested on the record made at the first hearing. Protestants moved to strike the testimony of certain witnesses and when the examiner refused, the issue went to the Commission. Holding that the examiner had ruled incorrectly the Commission decided that a full hearing to which the petitioners were entitled included the right to cross-examine adverse witnesses.

We are also of the opinion that the action of the Commission was invalid by reason of its failure to observe the provisions of the Administrative Procedure Act as to the designation of a qualified examiner to conduct the hearing and make a report. Section 7 of the statute, 5 U.S.C.A. § 1006, provides that in hearings conducted in pursuance to § 5 there shall preside at the taking of evidence the agency, or one or more members of the body which comprises the agency, or one or more examiners appointed as provided in the Act. Section 11 of the Act, 5 U.S.C.A. § 1010, provides that subject to the civil service and other laws to the extent not inconsistent with the statute, there shall be appointed by and for each

agency as many qualified and competent examiners as may be necessary for proceedings pursuant to the Act.

It is conceded that the examiner who conducted the agency hearing in the instant case was not appointed in accordance with the statute, and it follows that all actions of the Commission based on his report are lacking in legal validity. A contrary conclusion was reached in Riss & Co. v. United States, D.C.W.D.Mo., 96 F.Supp. 452, where it was held that the determination of the Commission upon an application of a motor carrier for a certificate of convenience and necessity was not an "adjudication required by statute to be determined on the record after opportunity for an agency hearing" within the meaning of § 5 of the Act, and that therefore a hearing before a qualified examiner need not be had. This decision, however, was reversed without opinion by the Supreme Court in Riss & Co. v. United States, 341 U.S. 907, 71 S.Ct. 620, 95 L.Ed. 1345, on the authority of Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616, where it was held that administrative hearings in deportation proceedings must conform to the requirements of the Act. The court pointed out that the statute constitutes remedial legislation which should be construed to give effect to its fundamental purpose to ameliorate the evils resulting from the practice of administrative agencies of commingling in one person the duty of prosecutor and judge. These decisions conclusively establish the rule that the Interstate Commerce Commission in passing on an application of a motor carrier for a certificate of convenience and necessity is obliged to observe the requirements of the statute in respect to a hearing before the Commission, or one or more of its members or a qualified examiner; and since this was not done in the instant case, the decision of the Commission to grant the certificate of the applicant cannot be allowed to stand.

The examiner's hearing was held and the Commission's position approving the examiner's report were rendered before the decision in the Supreme Court in Riss v. United States, supra; and the subsequent refusal of the Commission to reopen the case is based chiefly, if not entirely, on the ground that plaintiff Pickett raised no objection to the qualifications of the examiner at the time of the hearing. This defense, however, is not tenable as to the plaintiff Pinkett since he had no notice of the disqualification until after the decision of the Commission was rendered, and is not applicable to the other plaintiffs since they were not parties to the cause at that time. Moreover, we are in accord with the conclusion of the court in L. A. Tucker Truck Lines v. United States, D.C.E.D.Mo., 100 F.Supp. 432, now on appeal to the Supreme Court of the United States, that the failure of an administrative agency to hold a hearing in accordance with the provisions of the Administrative Procedure Act is a defect which invalidates the whole proceeding and may not be waived.

A decree will be issued enjoining the Commission from issuing a certificate in accordance with the Cochran application, and the case will be remanded to the Commission for further proceedings.